Good morning, your honors. Phil Hantel for Mr. Acosta. I don't know that I have much more to add to the papers that I've filed. I noticed that the Why aren't the water bottle and the tattoos good enough on the identification? I think they are. And I think that that was some of my point in the trial that he didn't need the probation officer to identify what he believed to be my client from a number of surveillance, Phil's surveillance work friends. Was there any prejudice by the fact that that officer testified? The jury didn't know that that officer was a probation officer. There was not. Well, I guess my position has to be that there was not an express announcement that she, in fact, was a probation officer. What I tried to get at in my filings was that, in fact, she testified like a professional witness. She said. And I agree with you in that point. I think that the point that I was trying to make in the filings was that I was limited in cross-examination on her identification because I couldn't get into where she'd seen him, why she'd seen him. I don't get the problem. It looked to me as though Acosta was contesting the identification because the teller had seen so little of him so long ago. So the prosecutor just piled on with the water bottle and the tattoos and the probation officer and carefully screened the jury from the probation officer's employment to avoid the prejudice that the jury would have if they realized what a record Acosta had. I don't understand what's the matter with that. Well, I think that it was, again, I was restricted in my right of cross-examination of that witness. I mean, there you go. That's the point. Now, whether that's. When you say restricted, you mean the judge wouldn't let you or just you decided as a tactical matter it was unwise? I decided as a tactical matter that it was unwise to bring out his power. What's the appellate point on that? That she shouldn't have been allowed to testify at all because I couldn't cross-examine her. That was my point. But you could cross-examine her. You didn't offer to stipulate that to a client in the picture. No, I was not allowed to do that. You couldn't? You were not allowed to? My client didn't let me stipulate. Oh. It was okay with the judge if you wanted to stipulate it. No, absolutely not. I'm trying to imply that the court restricted me in any way in that matter. Now, on the teller who worked at another branch that had also been robbed, it looked to me as though our all-stop case was distinguishable because she doesn't work there anymore when she's in the veneer. And our en banc in fields seems to rule out implied bias for that sort of thing. So you have to burn a perempt on her if you don't want to. What am I missing there? Well, I think the point I was trying to make, while I agree with this Court's interpretations, I think that fields is a little bit distinguishable in the sense that there was no challenge in fields to the juror as a challenge for cause. At least it didn't appear from the facts in that case that I was reading this morning that that's what happened. And I guess that the – in the fields case, there was a layman's disclosure or lack of disclosure about what the true goings-on of the prejudice were. And I guess in fields, if I remember correctly, there was something about an assault and something of a girlfriend, and it turned out to be a rape and maybe perhaps more violent than what was initially disclosed by the juror. I think here, you know, the record is clear about what the conversation was that the court, the prosecutor and myself, had with that juror and what she said. And I think the point that I was trying to make – No indication she lied, right? There's no indication that she did lie. I have no information that she did lie. I think the point that I was trying to make was that any reasonable person couldn't have – I mean, yeah, she said she wasn't going to be biased, but she had to be, because she had been the subject of these – at least a robbery that happened right next to her and then two robberies. I guess the question is what she had to be. Is that true? That's correct. You know, that has to be my position, that, you know, nobody could not be biased in that. She should have been stricken for cause merely for what she'd gone through. But doesn't that take away the discretion of the trial judge in this situation? I mean, there's no such thing as a perfect juror, I suppose. We give discretion to the trial judges to evaluate the circumstances, the demeanor, what's going on here. What did the district judge do wrong here? I mean, didn't he make a pretty careful analysis of this? I think she did. She rather. Again, I think that the point that I was trying to make is that, yes, I agree that there should be broad discretion here. I count, you know, the demeanor and whatnot, like you correctly noted. I think the point is at some point the facts become – So you're saying there's a per se rule that when somebody with these facts appears, they just, by definition, it's a peremptory challenge and, I mean, it's mandatory and that's it? Well, I don't think that it should be a per se rule. I think that it, you know, in instances like this, I think the appellate court, while giving deference to the judge, has the record of – But what do we – in order to find an abuse of discretion, we've got to find something that the district court did wrong. What did it do wrong? I think that it – Other than it didn't agree with you. Well, I mean, I think that that's it. And I think that the facts of this individual's background as to being from Bank of America, being a teller who was at a Bank of America – But no longer employed there, right? No longer, correct. That there should have been a challenge for cause granted in that. Counsel, I'm trying to figure out what the issues were in the trial. It looks to me as though the only real issue in the trial was identity. Was this the guy? It doesn't seem like there was a real issue about whether the bank was robbed, maybe an issue about whether it was federally insured. Right. It didn't look like much of an issue. If it's only identity, let's assume that she's really hostile to bank robbers, having been a victim of one. Still, she's not hostile to people who are falsely accused of being bank robbers. She might really want to hammer them, max them out, if she were a sentencing judge. But I don't understand why that necessarily biases her on identification. Or, for that matter, do I understand why it biases her on the FDIC insured element? Well, I don't. I mean, I'm kind of hostile to bank robbers myself. It's a bad thing to do. I really shouldn't do that. But that doesn't mean I'd eagerly convict anyone in the room. Well, I think, you know, my position has to be that because she'd gone through this, she brought a certain amount of bias into that jury room. And I agree with you that the only issue in the case was identity. But maybe because of her experience with bank robberies, she did, you know, had overcome that reasonable doubt standard relative to the identification. Is it your position that in an ordinary case, if a person's been a victim of a crime that's similar to the crime on trial, that that person needs to be disqualified for cause? Like, somebody's been robbed on the street. You don't want them as a juror in a robbery. So they're automatically excused for cause, right? That's similar to what this woman's doing. Well, yeah. And I don't think it should be. Well, I think that I don't think that I can in good faith argue to this court there needs to be a blanket exception to that. And I don't think that's what the case law holds. I think in certain instances, this crime can be so similar that there should be a presumption of bias in that individual. And I think that that would have been reasonable in this case. Could you explain this career criminal issue a little? Unless you want to save the time. Yeah, sure. The crux of the matter, I think, is that the prosecutor did not sufficiently prove the state court's conviction and what he was convicted for in Arizona in this hearing. As I tried to illustrate in my opening brief, under that statute, there's a number of different crimes, some that can be classified as drug trafficking crimes, and then there's the simple possession of narcotics. All of the paperwork that the prosecutor provided at sentencing, which was not introduced into the record, basically said that it just didn't narrow down that statute as to whether it was a drug trafficking crime or not. Whether it was a drug trafficking crime or whether it was a simple possession. At 154, the supplementary excerpts of record, it says, I've given Mr. Hantel a copy. What was a copy of? A copy of what? 154, I apologize. It was, if I recall correctly, it was a copy of the post-conviction relief reply that the government had filed in Mr. Acosta's other bank robbery case in front of Judge Carroll. Oh, so it's not the Arizona conviction record? I think there were some – there was some paperwork in that. I don't know what the entire – I don't recall what the entire packet was, but that was – I do recall the sentencing. Was the Arizona conviction record produced during the sentencing proceedings? I think he may have had it in his hand. It was never introduced into the record. Who had it in his hand? The prosecutor. What about the judge? I don't know that she had it. I don't. It was referenced in the pre-sentence report. I don't know that if he approached and gave a copy to the judge or not. I don't believe he did, but I could be in error. My objection to the pre-sentence report is saying he hadn't been convicted of anything. Yes. My pre-sentence – actually, my objection to the pre-sentence report is in that same excerpt of the records at page 23. He denied he was convicted of a crime. I thought it was a conspiracy to sell an archivist's job. The crime was charged as possession of intensities or distribution or whatever the term of it is in Arizona State Court, and then he entered a plea, I believe, to another charge that was for the basis of not getting mandatory jail time. Did the response to the objection to the pre-sentence report include the Arizona conviction record? It did not. If you win that court, you just go back down and it gets pulled out and the court upset it. That may very well happen. Can we take judicial notice of it? Well, obviously, how I argued in my reply was that I asked you not to. But why can't we if it's an official? Well, I think that it's an unrelated proceeding, and I outlined that in my reply brief. And asked that this court not do that. Related to the sentence. I understand that. If the court, either through the pre-sentence report or in actual documents, had the plea and a judgment of conviction before it, would that be sufficient? My reading of the law is it would be. Thank you, counsel. May it please the court. My name is Carla Hodes-Delore. I'm an assistant U.S. attorney representing the government. I'll just follow up on what you were just asking, opposing counsel, about the record regarding the criminal history while it's still fresh in our mind. Regarding the supplemental excerpts of record on page 153, the page before, the prosecutor in this case, Mr. Heider, gave the court, when they were asking about whether the defendant was, in fact, a career offender, Mr. Heider stated that this was answered in the government's response to Mr. Heider's 2255 that was filed in his other bank robbery case. Attached to the government's response was, in fact, the state court records. It was a copy of the transcript during his sentencing in that case, the indictment, the plea agreement, and the judgment of conviction in the state cases. Do we have that in the excerpts? Yes, that is in the excerpts of record. I lost the – it is at page 206. 206 is the indictment, and then 209 is the plea agreement, and 213 is the sentence of imprisonment. I've attached the entire government's response to the 2255 and attached to those responses were the state documents. And the court had this, right? Correct. That is correct. When the prosecutor, Mr. Heider, he asked to approach the bench, he gave the court the copy of the 2255 response that did, in fact, have all the state records. Does the record indicate whether Mr. Hantel was given a copy of that? Yes, it does. On page 154 of the supplemental excerpts of record, he asked the court if he can approach us, and he does. He gives them the records, and then he also says, I've given Mr. Hantel a copy. So everyone had before them the correct documents for the all the rest. So the indictment, plea agreement, and then the sentencing record, right? Correct. And from that, the court did determine that, in fact, his plea agreement, his state plea agreement for conspiracies to sell drugs did, in fact, qualify as a predicate offense to which he could use to find him as a career offender. Was an objection raised at that time that that's not sufficient evidence or anything like that? There was no objection as to the court reviewing the documents at that time. The objection rather went to the fact that he did not believe his state conviction qualified as the necessary predicate offense in order to be used. So he didn't object to the authenticity of the court decision? No. Correct. There was no objection to that. And, in fact, that his state conviction for conspiracy to sell narcotic drugs did, in fact, qualify as a predicate offense, although it was not specified under what subsection of the Arizona statute he was convicted under. He was convicted under the conspiracy to sell narcotics, and that could only fall under subsection 2 or 7 of the state statute, which deals with possession of narcotics for sale. So it does qualify. Those are all Class II felonies, right? Correct. With regard to the biased juror issue, the court did not abuse its discretion in denying defendants' challenge for cause because there was neither actual bias nor implied bias in this case. This is not one of those extreme or extraordinary circumstances where the court should imply bias. The juror was honest in all of her questions during Boisdier, and she stated that she did not have a current direct relationship with the victim bank in this case. She had been a teller four years previously, and although robberies had occurred while she was a teller, she testified that, one, she didn't even remember when the robberies occurred. She was not affected by them in any way. She didn't take them personally, and she felt she could be. Oh, you mean guns were not pointed at her? No. It was the teller next to her that was robbed, and, in fact, she testified that she never saw a gun or a knife that had been used in either of the robberies. And this court needs to give deference to the district court's finding that she was very matter-of-fact in her responses. Her demeanor matched her responses, and there was nothing that indicated that she would not be fair and impartial, or that she would not be fair and impartial. Was anything at issue in the case except the identification? Just the identification was at issue. And regarding the identification testimony regarding the probation officer and the defendant's former employee, the court did not use its discretion in allowing that testimony into the record. Both the court found that the probation officer and the employee both had sufficient and sustained contact with the defendant such that they viewed it would help the jury in evaluating who really was the robber. I didn't read her testimony. Did she basically say, I know the defendant, I've seen him a number of times, and he's the guy in the picture, without saying what her job was? Exactly. That is correct. Yes. It never even came up how she knows you. She said, I've known him since March of 2002, I've seen him 15 times, and she was able to talk about that she was familiar with his looks. Was that sort of what the employer said to you, or was his testimony? The employer's testimony was that he had employed the defendant for a couple of months in 2002, which is when the robberies occurred, and he saw him about three to five days a week. Like you said, the court did not err in allowing any of this testimony because it was sufficient contact, and defendant's appearance was, in fact, as the court found, different in person than it had been at the time of the robberies. Because of the beard? Because of the beard and his weight. In fact, the teller testified that she could not remember the defendant's weight or whether or not he had facial hair, so this did go to help that decision. And if there were any potential error, it was harmless given the other evidence that had been presented against the defendant. If the court has no other questions. Okay. Thank you. Thank you, counsel. Counsel, you had used your time. Thank you, counsel. United States v. Acosta is submitted. We'll hear Hargrove v. Plyler. Thank you.
judges: Kleinfeld, Smith M., Siler